# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LAKE FOREST REAL ESTATE INVESTORS, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 19 C 2263 |
| THE VILLAGE OF LINCOLNWOOD, ILLINOIS, and BARRY I. BASS, individually and as President of the Village of Lincolnwood, | ) ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Barry I. Bass ("Bass") and the Village Lincolnwood, Illinois's ("Lincolnwood") (collectively, "the Defendants") motion to dismiss Plaintiff Lake Forest Real Estate Investors, LLC's ("LFRE") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants in part and denies in part the motion.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in LFRE's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

*The Purple Hotel Background*

Plaintiff LFRE is an Illinois limited liability company engaged in the business of real estate development and financing. Michael Sieman ("Sieman") is LFRE's founder and Manager. Defendant Lincolnwood is an Illinois municipal corporation. Defendant Bass is currently the President of Lincolnwood and formerly served on its Board of Trustees.

The facts of this case stem from LFRE's attempt to redevelop a parcel of real estate commonly known as the "Purple Hotel," which is located at 4500 West Touhy Avenue in Lincolnwood. Since its opening in the 1960s, the Purple Hotel has changed names and owners several times until the hotel closed its doors in 2007. The owner of the property at the time of closing was North Capital Group ("NCG"), which was managed by its principal Zvi Feiner ("Feiner").

On or about August 20, 2013, NCG and Lincolnwood entered into a Restated Pre-Development Agreement ("Pre-Development Agreement") relative to the Purple Hotel, contemplating the demolition of the hotel and submission of an application for zoning and subdivision. The Pre-Development Agreement was extended three times, and the hotel was not demolished until 2015, leaving only the building foundations. The Pre-Development Agreement also provided that Lincolnwood waived or postponed certain post-demolition restoration requirements set forth in the Lincolnwood Municipal Code.

*LFRE's Initial Involvement in the Redevelopment*

NCG failed to submit the application for zoning and subdivision laid out in the Pre-Development Agreement, so at the urging of then Lincolnwood President Jerry Turry ("Turry"), LFRE began discussions with Lincolnwood representatives regarding the redevelopment of the property. In November 2016, LFRE commissioned architectural designs for the property and sought permission from NCG to make a formal presentation to Lincolnwood at a meeting of the Committee of the Whole. In January 2017, LFRE sent its initial design documents to Lincolnwood, who requested certain revisions and that LFRE make a presentation at a meeting of the Committee of the Whole in February 2017. However, LFRE had not received permission from the property owner to do so.

In April 2017, Bass defeated Turry and was elected Lincolnwood President. In June 2017, LFRE representatives met with Bass, Lincolnwood Trustee Jesal Patel, Lincolnwood Manager Tim Wilberg, and Community Development Director Steve McNellis. The parties discussed how Lincolnwood wanted the approval process to proceed under the Lincolnwood Village Code Section 8.05 and 8.06. Under those sections, Lincolnwood affords applicants the right to access the zoning procedure, which is the mechanism to gain the approval required to proceed with their intended land use. Those sections include a mandatory "preapplication" conference with the Lincolnwood Board of Trustees before an application for a planned unit development

3

may be filed. The parties also outlined an entitlement schedule for the project, with an eye toward a July 2018 groundbreaking.

At a Board meeting on August 15, 2017, the Lincolnwood Board approved a concept plan for the property which was similar in scope, yet smaller in size, to that submitted by LFRE. Under Lincolnwood ordinances, approval of a concept plan is optional and does not replace the mandatory preapplication conference.

*Changed Ownership of the Purple Hotel Property*

Thereafter, Romspen Club Holdings ("Romspen"), the lender to the prior owner, obtained title to the property. In early November 2017, LFRE representatives met with Bass, advised him that LFRE signed a Letter of Intent for the purchase of the property, and shared the contents of the Letter of Intent with Bass. Later that month, Bass met with Romspen, but LFRE was not permitted to attend that meeting. At the meeting, Bass directed Romspen's Chief Financial Officer not to sell to any group that included Larry Kaiser ("Kaiser"), a broker who introduced LFRE to various individuals in Lincolnwood in connection with the project. Bass also inquired about the status of an offer made by Marvin Feiger, a friend and colleague of Bass.

On November 30, 2017, Romspen and LFRE entered into a Purchase and Sale Agreement ("the Agreement") for the property. Shortly thereafter, Lincolnwood asked LFRE for a copy of the Agreement, specifically requesting information regarding the timelines set forth in the Agreement. Due to confidentiality concerns, LFRE passed the request along to Romspen, who provided Lincolnwood with a redacted version of the

4

Agreement. That document required LFRE to make an earnest money deposit of $300,000, which became non-refundable upon the expiration of the Inspection Period on February 14, 2018. Closing was to take place within 45 days following the expiration of the Inspection Period. Failure to close in a timely fashion would result in the termination of the Agreement and a forfeiture of the earnest money deposit.

In January 2018, LFRE was approached by Jeff Krol ("Krol"), a representative of developer CA Ventures, about a possible involvement in the residential aspect of the project. LFRE met with Krol and developer Phil Goldberg ("Goldberg") regarding the possible collaboration. LFRE stated that they were not interested in involving CA Ventures, but Goldberg expressed a continued interest in the project. He met with LFRE two additional times and gained access to LFRE's offices to view the 3D models of the project. Ultimately, LFRE refused Goldberg's offer of involvement in the project. LFRE later learned that Goldberg is Bass's brother-in-law, and Bass asked Goldberg to "check up on" LFRE to find out its intentions.

***Lincolnwood's Obstruction of the Mandatory Preapplication Process***

On February 11, 2018, Lincolnwood scheduled a meeting with LFRE for February 20, 2018 to discuss the project and the anticipated approval process. Shortly before the meeting was to take place, Lincolnwood cancelled the meeting and refused to reschedule it.[1] LFRE subsequently requested meetings with Bass and other

---

[1] LFRE and Romspen entered into an Amendment to the Agreement, extending the closing and termination deadline to April 4, 2018.

Lincolnwood representatives to complete the mandatory preapplication process, but those requests were either ignored or refused—despite LFRE's completion of the required materials.

On February 20, 2018, the Lincolnwood Board of Trustees met and considered an ordinance authorizing negotiations for the purchase of the property, a necessary precondition to Lincolnwood's condemnation of the property using eminent domain. The Board also considered a resolution directing enforcement of the Village Code against the property and its owners, which would require removal of the building foundations and other non-urgent efforts that could be more economically performed during construction of future structures. If not part of the ultimate construction on the property, removal of the building foundations alone could add one million dollars to the project cost. During these discussions, Bass indicated that any communications or offers would be had only with the owner of the property, not the contract purchaser.

LFRE's principal, Sieman, was permitted ten minutes to speak at the Board's meeting. He addressed LFRE's background, its vision for the property, and its willingness to work with Lincolnwood to achieve its desired objectives. He also cautioned of the delays and impediments that passage of the considered resolutions would present. Finally, Sieman advised the Board that Lincolnwood had unilaterally cancelled their meeting to complete the preapplication process and requested that the meeting be rescheduled.

Despite Sieman's presentation, the Board passed the resolution directing enforcement of the Village Code against the property ("the Enforcement Resolution"), which had previously been waived or postponed as to NCG. The Board put over to the next meeting the discussion of the ordinance authorizing negotiations for the purchase of the property.

At the March 6, 2018 Board meeting, LFRE was given three minutes to address the proposed ordinance during the public comment portion of the meeting. The Board nevertheless passed the ordinance authorizing negotiations and an offer to purchase the property ("the Negotiation and Purchase Ordinance").

On March 22, 2018, LFRE requested direction from Lincolnwood as to how it should proceed and requested that the February 20th development staff meeting be rescheduled. LFRE received no response from Lincolnwood.

LFRE also corresponded with Romspen, who indicated that Lincolnwood stated it required a "Village approved" developer. However, Lincolnwood ordinances do not mention Village approval of a developer, and LFRE's requests for an explanation of what it took to gain such approval fell on deaf ears.

At the April 3, 2018 Board meeting, LFRE again appeared and was permitted to speak briefly. Sieman indicated that financing had been arranged and there were two development loan applications ready for execution, depending on how Lincolnwood wished to proceed. He once again asked that the February 20th meeting be rescheduled and that Lincolnwood remove the Negotiation and Purchase Ordinance, to no avail. On

7

April 4, 2018, LFRE once more asked to meet with Lincolnwood concerning the project, but it was again denied a meeting within the Agreement's Inspection Period.

***LFRE's Attempt to Assign the Agreement to Tucker Development***

Frustrated with Lincolnwood's obstructive conduct, Sieman contacted Tucker Development to discuss whether it would be interested in taking an assignment of the Agreement. A successful assignment would enable LFRE to mitigate its damages and recover its earnest money deposit prior to the forfeiture date.

Tucker Development's owner indicated that he had known Bass for over 30 years. Bass assured him that he could get the Negotiation and Purchase Ordinance removed and the Enforcement Resolution stayed. LFRE introduced Tucker Development's owner to Romspen to secure an assignment of the Agreement.

Although the Agreement expired on April 4, 2018, LFRE continued to discuss extensions with Romspen to either close or assign it. On information and belief, Lincolnwood convinced Romspen to include additional provisions as a condition of extension, including: (1) the Agreement could not be terminated even if condemnation proceedings were initiated; (2) Romspen could force LFRE to assign the Agreement to another purchaser; (3) LFRE needed to receive Lincolnwood's approval for any purchaser; and (4) LFRE or its assignee were required to have Lincolnwood stay the Enforcement Resolution, provided that Romspen could remarket the property for sale to a third party until LFRE did so. On information and belief, Lincolnwood and Bass also persuaded Romspen to remove its promise of seller financing from the Agreement.

Given the burden of the additional terms, LFRE did not enter into the extension of the Agreement. Accordingly, the Agreement was terminated and LFRE lost its earnest money deposit.

***Tucker Development's Purchase of the Purple Hotel Property***

Days after the Agreement was terminated, Tucker Development entered into a new agreement with Romspen to purchase the property. This agreement did not contain the provisions included in the proposed extension detailed above. Both Tucker Development and Romspen have acknowledged that Bass engaged in discussions with them to enter into a separate purchase agreement while LFRE was still under contract with Romspen.

On April 17, 2018, Tucker Development was permitted to make a presentation to the Lincolnwood Board at a meeting of the Committee of the Whole. This presentation failed to follow the mandatory preapplication procedures laid out in Section 8.05 and included no plans or development concept for the site. On May 1, 2018, the Board repealed the Negotiation and Purchase Ordinance and agreed to stay enforcement of the Village Code "so long as Tucker is the contract purchaser."

Based on these events, LFRE filed its initial complaint on April 3, 2019. Approximately four months later, LFRE amended its complaint, alleging violations of the Due Process and Equal Protections Clauses and tortious interference with prospective economic advantage. On September 11, 2019, the Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

9

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

The Defendants urge the Court to dismiss LFRE's amended complaint for three reasons: (1) LFRE does not have a property interest underlying its Due Process Clause claim; (2) LFRE has insufficiently alleged an Equal Protection Clause claim; and (3) LFRE's tortious interference with prospective economic advantage claim is barred by

the Illinois Tort Immunity Act, 745 ILCS 10/2-101 *et seq*. The Court addresses each argument in turn.

**I. Due Process Claims**

The Due Process Clause of the Fourteenth Amendment states that, "No state shall … deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. "In any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (holding that "there can be no deprivation of property without procedural or substantive due process of law without an underlying property interest"). Only once such a right is established "can courts move on to what level of process was due." *Lavite v. Dunstan*, 932 F.3d 1020, 1032–33 (7th Cir. 2019).

The first potential avenue for LFRE's property interest is in receiving the necessary zoning approval to redevelop the Purple Hotel property. "To have a protectable property interest in a benefit … a plaintiff must have more than an 'abstract need or desire for it' and more than a 'unilateral expectation of it.'" *Cole v. Milwaukee Area Technical College Dist.*, 634 F.3d 901, 904 (7th Cir. 2011) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "In essence, a plaintiff must point to a state law, or another independent source, that *guarantees* him entitlement to a government benefit." *Bell*, 841 F.3d at 719 (internal quotation omitted) (emphasis in original).

11

Applying this rule to the instant case, LFRE would not be able to plead a property interest in receiving the necessary zoning approval for its intended redevelopment project because Lincolnwood's decision on that matter is discretionary. *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."). Moreover, any contractual provision in the Agreement related to the zoning approval would not salvage LFRE's property interest, as "[l]osing the opportunity to acquire property does not constitute a deprivation." *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007).

The second potential avenue for LFRE's property interest is that they are entitled to access the zoning application process, rather than claiming an interest in the ultimate outcome of the zoning decision. LFRE argues that Lincolnwood's municipal code sets forth mandatory procedures regarding the zoning application process, meaning that the code creates a property interest in access to that process. However, the Seventh Circuit has repeatedly held that "local procedural protections do not by themselves give rise to federal due process interests." *Lavite*, 932 F.3d at 1033. "Even when required by statute or ordinance, purely procedural rules of state and local law give rise to constitutionally protected interests only when the mandated procedure contains within it a *substantive* liberty or property interest." *Id.* The Seventh Circuit noted that, "Process is not an end in itself. Its constitutional purpose is to protect a substantive

interest to which the individual has a legitimate claim of entitlement." *Id.* (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).

Applying that rationale here, LFRE cannot allege that the local zoning application procedures create a property interest because the procedures do not touch on an underlying substantive interest. As noted above, the ultimate zoning decision is a matter of governmental discretion and, as such, is not an entitlement that can be deemed a property interest. Accordingly, LFRE cannot claim a property interest, and their due process claims in Count I must fail.

## II. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment states, "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Typically, an Equal Protection Clause claim alleges class-based governmental discrimination, such as race, sex, or national origin. *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). "However, the Clause also prohibits the singling out of a person for different treatment for no rational reason." *Id.* Claims of this nature are commonly referred to as a "class of one." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008).

"To prevail on a class-of-one equal protection theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Cannici v. Village of Melrose Park*, 885 F.3d 476, 480 (7th Cir. 2018) (internal citations omitted). The Defendants assert

that LFRE fails in both of these respects, as they do not satisfy the "similarly situated" prong and there is a rational basis for favoring Tucker Development. The Court addresses each position in turn.[2]

### A. Similarly Situated Requirement

"The classic class-of-one claim is illustrated when a public official with no conceivable basis for his action other than spite or some other improper motive … comes down hard on a hapless private citizen." *Swanson*, 719 F.3d at 784 (internal citation omitted). "To achieve clarity, courts look to the treatment of similarly situated individuals: if all principal characteristics of the two individuals are the same, and one received more favorable treatment, this may show there was no proper motivation for the disparate treatment." *Id.* Although "[t]here is no precise formula to determine whether an individual is similarly situated to comparators," *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004), the person must be "directly comparable to the plaintiff in all material respects." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010).

Applying this principle to the instant case, it is clear that LFRE has sufficiently alleged that Tucker Development is similarly situated. The amended complaint states that both LFRE and Tucker Development are "experienced, qualified purchasers and

---

[2] The Defendants also argue that the Supreme Court's opinion in *Engquist*, which held that class-of-one claims are not available in the public employment context, should extend to this case and bar LFRE's claims from the outset. 553 U.S. 591 (2008). However, the Seventh Circuit has not extended *Engquist* to the zoning context, and the Court declines to do so here absent their guidance.

14

developers," sought to purchase the Purple Hotel property, aimed to redevelop the property, and tried to access the zoning application process to accomplish this goal. Despite these similarities, the amended complaint notes that LFRE received disparate treatment regarding its ability to access the zoning application process and Lincolnwood's enforcement of resolutions and ordinances. The Defendants state that LFRE's allegations are insufficient because they do not plead comparative years of experience, quality of subcontractors, comparable prior projects, and other similar metrics. However, this detailed comparison is not required to survive a Rule 12(b)(6) motion. Accordingly, LFRE has satisfied this prong of the class-of-one analysis.

### B. Rational Basis for Favoring Tucker

The second prong of the class-of-one analysis requires LFRE to allege "that there is no rational basis for the difference in treatment." *Cannici*, 885 F.3d at 480. At the pleadings stage, it only takes a "*conceivable* rational basis for the difference in treatment" to defeat a class-of-one claim. *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015). The Defendants maintain that LFRE pleads itself out of court by alleging that Bass had a 30-year relationship with Tucker Development and considered them to be a "credible contract purchaser." However, this does not provide a rational basis for the Defendants to subject LFRE and Tucker Development to different treatment in the zoning application process. While the Seventh Circuit has set a low threshold for this analysis, favoritism is not a rational basis to extend or withhold access

15

to a government benefit. Therefore, LFRE sufficiently pleads Count II and the motion to dismiss the Equal Protection Clause claim is denied.

**III. Tortious Interference with Prospective Economic Advantage Claim**

In Count III, LFRE alleges that the Defendants effected a tortious interference with their prospective economic advantage. To state this claim under Illinois law, LFRE must allege: "(1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy; and (4) damage to the plaintiff resulting from the defendant's interference." *LaBella Winnetka, Inc. v. Village of Winnetka*, 2008 WL 696902, at *10 (N.D. Ill. 2008). LFRE claims that the Defendants engaged in this conduct by persuading Romspen to not extend the Agreement with LFRE, encouraging Romspen to enter into a purchase agreement with Tucker Development instead, and erecting procedural barriers to prevent LFRE's satisfaction of conditions under the Agreement.

The Defendants claim that the Illinois Tort Immunity Act, 745 ILCS 10/2-101 *et seq.*, bars such claims. "The purpose of the Tort Immunity Act is to protect local public entities and public employees from liability arising from the operation of government. By providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damages claims." *Village of Bloomingdale v. CDG Enterprises, Inc.*, 196 Ill.2d 484, 490 (2001). Specifically, the

Defendants rely on Sections 2-103,[3] 104,[4] 109,[5] 205,[6] and 206[7] of the Tort Immunity Act, which provide immunity for claims arising from the failure to enforce laws or the discretionary issuance or denial of any permit, license, or similar authorization.

Both state and federal courts in Illinois have upheld the application of immunity under these sections regardless of "willful and wanton conduct" or "corrupt or malicious motives." *CDG Enterprises*, 196 Ill.2d at 493; *FKFJ, Inc. v. Village of Worth*, 2019 WL 277723, at *4 (N.D. Ill. 2019). For example, in *CDG Enterprises*, the Illinois Supreme Court granted immunity to a village who was alleged to be "secretly working to force [the plaintiff] out of the planned development" and to "help cronies of certain Village officials purchase of one of [the development's] five parcels." *CDG Enterprises*, 196 Ill.2d at 487–88. Although LFRE's allegations regarding the Defendants' motives are concerning, these actions are nonetheless shielded from liability under the Tort Immunity Act as they are so interrelated to the Defendants' discretion to enforce local ordinances or issue, deny, suspend, and revoke permits,

---

[3] "A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." 745 ILCS 10/2-103.
[4] "A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." 745 ILCS 10/2-104.
[5] "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.
[6] "A public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law." 745 ILCS 10/2-205.
[7] "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." 745 ILCS 10/2-206.

17

certificates, approvals, and other similar authorizations related to the redevelopment plan. As such, Count III must be dismissed.

## **CONCLUSION**

For the aforementioned reasons, the Court grants in part and denies in part the Defendants' motion to dismiss. It is so ordered.

Dated: 11/4/2019

_____
Charles P. Kocoras
United States District Judge