# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| LAKE FOREST REAL ESTATE INVESTORS, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 19 CV 2263 ) |
| VILLAGE OF LINCOLNWOOD, ILLINOIS, ET AL., | ) Honorable Judge ) Charles P. Kocoras ) |
| Defendants. | ) |

## DEFENDANT VILLAGE OF LINCOLNWOOD'S
## RULE 56.1(a)(3) STATEMENT OF UNDISPUTED FACTS

**The Village of Lincolnwood and The Purple Hotel**

1. The Village of Lincolnwood ("Village") is a municipality located in the northern suburbs of Chicago. The property which is the subject of this lawsuit is located at the intersection of Touhy and Lincoln in the Village. It is the site of a former hotel commonly known referred to as the "Purple Hotel." Over the past 15 years, the Purple Hotel property ("Subject Property") fell into disrepair. For historical background, see Digital Research Library of Illinois, "The History of The Purple Hotel in Lincolnwood, Illinois."[1] **Def. Ex. 47.**

2. Because of its strategic location in Lincolnwood, the corporate authorities of the Village have had a continuing goal of redeveloping the Purple Hotel site. **Def. Ex. 48;** Wiberg Dep. 90-91. To that end, the corporate authorities of the Village created what is commonly referred to as a Tax Increment Financing District, or "TIF District," for the Purple Hotel property. 65 ILCS 5/11-74.1-1, *et seq.* Wiberg Dep. 94-95.

---

[1] For the most part, Deposition exhibits are numbered to correspond with the numbering used during various depositions. Other exhibits are Deposition transcripts, e.g., the Deposition of Mr. Wiberg is Def. Ex. 48.

3. In 2012, a company named North Capital Group ("NCG") acquired the Purple Hotel property and entered into a development agreement with the Village. Wiberg Dep. 96. Having the NCG deal in place was a "happy occasion" for Lincolnwood. Wiberg Dep. 97. However, after several years of failed development efforts, the Purple Hotel property fell into foreclosure. In October, 2017, the Purple Hotel property was purchased at a foreclosure sale by NCG's mortgage lender, Romspen Investment Corporation ("Romspen"). **Def. Ex. 49;** Roitman Dep. 18.

### The Village Government

4. The Village is governed by a Village President and a six-member Board of Trustees. The Village President generally votes only in the event of a tie. 65 ILCS 5/3.1-40-30. At times relevant to this litigation, the Village President was Defendant Barry Bass, who was elected Village President in April, 2017. Wiberg Dep. 99.

5. The day-to-day operations of the Village are the responsibility of the Village Manager. The Village Manager, at times relevant, was Timothy Wiberg. Wiberg Dep. 11-12. The Village's Planning and Zoning Director was Steven McNellis. **Def. Ex. 50;** McNellis Dep. 11, 13.

### The Importance of Purple Hotel Redevelopment To Village Authorities

6. The redevelopment of the Purple Hotel was a dominant goal of the Village elected officials. It was also an important political issue. Among other things, one of Bass' campaign platforms was to get the Purple Hotel redeveloped after all the years of frustration. Wiberg Dep. 99; **Def. Ex. 51, Ans. Doc. # 41, Ex. 14** (Quoting Wiberg is saying "There's no higher priority for the Village than to see that site developed . . . It's an embarrassment and the town is too nice to have that prominent corner sitting there for as long as it has been").

7. In spring-summer 2017, the Village was considering using its authority under the TIF law to potentially acquire the Purple Hotel either by purchase or through the use of its eminent domain authority. To that end, the Village commissioned a planning firm named Lakota to develop a concept plan for the redevelopment of Purple Hotel. **Def. Ex. 16**; McNellis Dep. 22.

8. On August 15, 2017, the Village adopted "A Resolution Adopting A Conceptual Site Plan For The Former Purple Hotel Site," **Def. Ex. 17;** See also **Def. Ex. 17A**, Minutes from 8-15-17 Village Board Meeting. One of the stated goals of the 2017 Resolution was to facilitate the Village's acquisition of the Purple Hotel by the use of eminent domain. **Def. Ex. 16, p. 4,** (Staff recommendation to adopt the Lakota Plan "as the Village's base concept plan for redevelopment of the former Purple Hotel site should the Village Board support the pursuit of land acquisition from eminent domain").

**Romspen's Acquisition of the Subject Property and Development Interest**

9. Romspen completed its acquisition of the Purple Hotel on October, 2017. Roitman Dep. 18. During this time, a number of potential developers approached the Village with potential development plans. McNellis Dep.19. One of those potential developers was Plaintiff, Lake Forest Real Estate Investors ("LFRE"). McNellis Dep. 20-21.

10. The principal of Plaintiff LFRE is Michael Sieman. Mr. Sieman's background is in real estate finance. **Def Ex. 52;** Sieman Dep. 28-29.

11. In 2017, Mr. Sieman and an architect named Todd Zima, formed a new development entity called "Z/S Development." Sieman Dep. 32-36; Zima Dep. 54. In particular:

(a) Mr. Sieman never served as a developer of record on a development project that went from beginning to end involving entitlements. Sieman Dep. 30-31.

(b) Mr. Sieman had never served as the lead in obtaining entitlements from a host municipality for any development. Sieman Dep. 32.

(c) Prior to Lincolnwood, Sieman never appeared before a municipality to obtain zoning relief on behalf of a project that he owned. Sieman Dep. 33.

(d) Prior to Lincolnwood, Sieman never appeared or served as a petitioner on a zoning proposal. Sieman Dep. 36.

12. Mr. Zima's background was as an architect working on institutional projects such as a building at the University of Chicago. Zima Dep. 65-66. Prior to the formation of Z/S, Zima had never served as a fee developer on a project. **Def. Ex. 53;** Zima Dep. 54.

13. In November 2017, LFRE and Romspen completed negotiation on a contract whereby LFRE would purchase the Purple Hotel property from Romspen. The Purchase and Sale Agreement ("PSA") became effective on or about December 1, 2017. **Def. Ex. 54.**

14. Under the PSA, the purchase price was $10.7 million. Roitman Dep. 129. LFRE posted a total of $300,000.00 earnest money. Roitman Dep. 129. Under the PSA, LFRE was given a due diligence period, to and including February 14, 2018, to investigate. As of February 14, 2018, the earnest money became non-refundable (in the vernacular, the earnest money "went hard" on February 14, 2018). Roitman Dep. 44. The PSA called for closing on the acquisition of the Subject Property to take place on April 2, 2018. Roitman Dep. 131.

**LFRE's Activities December 2017 – January 2018**

15. During the first two months that it had the Subject Property under contract, LFRE had little or no communication with the Village. Instead, Mr. Sieman was focusing his efforts on obtaining investors or development partners and also attempting to acquire separately-owned property adjacent to the Purple Hotel. Zima Dep. 38, 32.

16. One of the people Sieman spoke to or communicated with in January 2018 was Richard Tucker, the head of Tucker Development Company. **Def. Ex. 7 (Bates 180-181)**; **Def. Ex. 55;** Tucker Dep. 17-19.

### The Rabbit Hole – The Village's Growing Concern With LFRE's Lack of Development Experience

17. From the outset, the Village authorities were very concerned about getting involved with an unknown and apparently inexperienced would-be developer after several years of failed effort with NCG. According to Wiberg, the elected officials were concerned that this particular new developer did not have the development experience to bring about the redevelopment of Touhy and Lincoln, and that, in effect, the predominant concern expressed by the elected officials was that they "don't want to go down another rabbit hole for a lot of years that we went down with North Capital Group." Wiberg Dep. 101.

18. One of the Village's advisory bodies is the Economic Development Commission ("EDC"). Wiberg Dep. 16. The minutes of the December 20, 2017 EDC meeting reflect that members of the EDC expressed concern and skepticism regarding LFRE's apparent lack of experience. ("Discussion ensued regarding Z-S Development and the lack of similar past projects the development team has completed. Commissioners expressed their hesitation in selecting a development team that has not worked on a project to a similar scale as the former Purple Hotel site"). **Def. Ex. 51, Ans. Doc. # 41, Ex. 1.**

### The Events of February 2018

19. The Lincolnwood Village Board met in closed session on February 6, 2018. As set forth in the minutes, the Village Attorney stated that "the basis for closed session is the potential purchase of the Purple Hotel property through the Village's eminent domain authority." **Def. Ex 11A.**

20. In early February, 2018, Wiberg reached out to Zima and Sieman relative to project status. **Zima Dep. 33.** On February 12, 2018, Zima sent an e-mail to Wiberg and McNellis proposing a staff level meeting. **Def. Ex. 12.** Wiberg responded the same day, proposing a meeting for February 20, 2018, at 10:00 a.m., at which point staff would "outline for you staff's proposed schedule for getting your project through a staff review process as well as the PUD process involving the Plan Commission and Village Board." **Def. Ex. 13.**

21. The Village Board met in closed session on February 13, 2018 to review the Purple Hotel matter. **Def. Ex. 11C.** As set forth in the minutes, Wiberg reported that "a meeting is set up for next week with the contract purchaser, Mayor and staff. The purpose of the meeting is to discuss a schedule, leasing efforts, concept plan, etc." **Def. Ex. 11C, p. 1.** The meeting minutes further reflect that at that meeting, the Village attorney presented the Board with multiple options for the property, which included allowing LFRE's development proposal to run its course; aggressively enforcing its ordinances against Romspen in order to eliminate Code violations and clear the property; and moving toward acquisition of the Subject Property ultimately through the exercise of the Village's eminent domain authority. **Def. Ex. 11C, p. 2.**

22. The Village Board then directed the Village attorney to move in the direction of ordinance enforcement and acquisition. Wiberg Dep. 114; **Def. Ex. 11C, p. 2.** In light of this direction, the Board further directed Mr. Wiberg to cancel the February 20, 2018 staff-level meeting. **Def. Ex. 11C, p. 2** ("It was noted that Mr. Wiberg should cancel the meeting that is scheduled with the contract purchaser"). Wiberg did so. Wiberg Dep. 116. Wiberg acknowledged that since he could not discuss what had occurred in executive session, it made sense to cancel the February 20, 2018 staff meeting. There was no reason to mislead Sieman-Zima if the Board was going to shortly decide to acquire the property. Wiberg Dep. 116.

23. LFRE did not exercise its right to cancel the PSA on or before February 14, 2018. At that point, the $300,000.00 earnest money became non-refundable and closing was still set for April 2, 2018. Roitman Dep. 129-30.

24. By this point Z/S had not developed any specific development plan or proposal to submit to the Village. They were in the process of retaining a planning firm. Zima Dep. 36, 38.

25. At the Village Board meeting of February 20, 2018, two measures were introduced. The first was a Resolution authorizing the issuance of a demand to Romspen regarding ordinance enforcement and clean-up of the Purple Hotel property. The second was a proposed Ordinance to authorize the Village to make a good faith offer to purchase the Purple Hotel property from Romspen. **Def. Ex. 51, Ans. Doc. # 41, Ex. 2, beginning at p. 5 of 12.**

26. Mr. Sieman was present at this meeting and objected to the passage of the acquisition measure. **Def. Ex. 51, Ans. Doc. # 41, Ex. 2, beginning at p. 5 of 12.** The minutes of the February 20, 2018 meeting reflect that the Village Board voted to continue discussion of the proposed acquisition ordinance at the Board's next meeting on March 6, 2018. **Def. Ex. 51, Ans. Doc. # 41, Ex. 2, beginning at p. 5 of 12**; Wiberg Dep. 117.

27. The Village Board's next meeting was on March 6, 2018. Prior to the commencement of the open session, the Village Board once again met in executive session. At the March 6, 2018 executive session and at the direction of Wiberg, the Village's Finance Director presented the Board with an analysis regarding financing options should the Village Board proceed with acquisition of the Purple Hotel property. **Def. Ex. 11D**; Wiberg Dep. 119.

28. At the regular Village Board meeting on March 6, 2018, Mr. Sieman once again argued against the Village adoption of the acquisition ordinance. The Board passed the acquisition ordinance that night. **Def. Ex. 51, Ans. Doc. # 41, Ex. 2; Ex. 3, beginning at p. 2.**

29. By letter dated March 7, 2018, the Village attorney corresponded to the Romspen attorney. **Pl. Ex. 29.** In this letter, the Village attorney invited LFRE to appear before a combined meeting of the Village Board and the EDC to be held on March 20, 2018, in order to make a presentation to both bodies. **Pl. Ex. 29.**

30. On March 20, 2018, Mr. Zima and Mr. Sieman appeared before the combined Village Board – EDC meeting. Both Mr. Zima and Mr. Sieman made oral presentations to the bodies, such presentations supported by Power Point presentations. Following the presentations, the Village Trustees and members of the EDC asked Mr. Zima and Mr. Sieman a number of questions. **Def. Ex. 56,** Transcript from March 20, 2018 Combined Meeting; **Def. Ex. 51, Ans. Doc. # 41, Ex. 4**, Minutes of the Combined March 20, 2018 meeting.

### Late March—Early April, 2018: Mr. Sieman Decides To Give Up the PSA; Enter Tucker

31. As identified above, the PSA called for an April 2, 2018 closing.

32. On or about April 2, 2018, LFRE and Romspen extended the closing date by two days, to April 4, 2018. **Pl. 49 Ex. 49**; Roitman Dep. 153.

33. On March 30, 2018, Michael Sieman sent an e-mail to Richard Tucker. **Def. Ex. 5 at Bates 803** ("The majority shareholder of this contract has instructed me to sell it if I can get an acceptable price. If you want to buy the contract and bring in your team, let me know"). The e-mail informed Tucker that Sieman's principal investor had directed him to sell the contract and inquired as to whether Tucker had any interest in the matter. Tucker responded by e-mail communication. **Def. Ex. 5**; Tucker Dep. 84-88.

34. Over the next few days, Tucker communicated with both Sieman and with Mr. Roitman from Romspen. Tucker engaged in negotiations with Romspen regarding whether Tucker

8

Development could acquire the Purple Hotel property. **Def. Ex. 5.** Tucker also engaged in text message exchanges with Village President Bass. **Def. Ex. 6.**

### The Events of April 3, 2018 And Mr. Sieman's Smoking Gun Admission That He and Zima Are Not Developers

35. Mr. Sieman and his attorney appeared and presented at the commencement of the April 3, 2018 Village Board meeting. **Def. Ex.11E.** During the course of his presentation, Mr. Sieman acknowledged that neither he, nor Mr. Zima, was a developer:

> You know, and in my hat as owner and, or not owner, sorry, that's wrong, contract purchaser, my background is really in capitalization of real estate, right? And I didn't come in here to tell you I was the developer. Todd didn't come in here to tell you he was the developer.

**Def. Ex. 60 at 7** (Transcript). Sieman did not mention to the corporate authorities during the course of this presentation the fact that he was trying to sell his contract and that his contract was about to expire on April 4, 2018. **Def. Ex. 60** (Transcript), generally.

36. While this was going on, Tucker and Roitman were engaged in e-mail exchanges about Tucker becoming the contract purchaser. **Def. Ex. 5.** Tucker also exchanged text messages with Village President Bass expressing his company's interest in becoming the contract purchaser for the Purple Hotel property. **Def. Ex. 6**; Tucker Dep. 31 ("But we wanted to basically move forward on the project ourselves").

37. Later that evening, the Village Board met in executive session. **Def. Ex. 11E.** The minutes of the meeting reflect that, among other matters, "Romspen asked that the Village provide an opportunity for the developer to make a presentation. The developer did so at two meetings. Discussion indicated that Trustees were not satisfied with the information provided."

38. On April 4, 2018, Village Planner McNellis scheduled a staff level meeting. **Def. Ex. 38.** ("Village Manager Tim Wiberg and I are available to meet with you per the Mayor's direction").

39. During the period of time from April 4, 2018, moving forward, Tucker Development continued to negotiate both with Romspen and the Village with a goal of Tucker Development acquiring a contract to purchase the Purple Hotel property. **Def. Ex. 5, p. 800** ("If you would like to submit your own offer along the lines we discussed yesterday, you are free to do so now").

40. LFRE defaulted on its contract by not closing on April 4, 2018, and Romspen thereupon issued a contract termination notice. **Pl. 41**; Roitman Dep. 161.

41. By e-mail dated April 11, 2018, Mr. Sieman declined the staff level meeting. **Def. Ex. 57.**

42. On April 17, 2018, Tucker advised the Village that it had obtained a contract to acquire the Purple Hotel property. **Def. Ex. 8.** On May 1, 2018, the Village Board repealed the acquisition ordinance. **Def. Ex. 58**, Minutes from May 1, 2018 meeting.

**Comparing Tucker Development To Z/S**

43. Tucker Development is a real estate development firm which was founded in 1996. Tucker Dep. 8.

44. Tucker Development is a vertically integrated firm that generally takes the project and controls it from the time it signs a contract until the time of occupancy. Tucker Dep. 8. Once Tucker obtains his entitlements, Tucker is responsible for projects in terms of hiring general contractors. Tucker Dep. 9. Tucker has been involved with over 10,000,000 square feet of development. Tucker Dep. 10. **Def. Ex. 3 and 4** are excerpts from the Tucker Development web

page identifying the background and history of the company along with a number of the company's developments, including the "900 West Randolph" development in the Fulton Market District of Chicago, and the "Hudson Lights" suburban mixed-use development in Fort Lee, New Jersey. Tucker's website is www.tuckerdevelopment.com.

45. Z/S Development was formed in 2017 by Michael Sieman and Todd Zima. Zima Dep. 7.

46. As of the fall of 2017, Z/S had no development contracts with any third party. The Purple Hotel property was the first land purchase contract that Z/S and LFRE had obtained. Zima Dep. 19.

47. Zima uses the term "fee developer," which refers to a developer who paid a fee to develop the real estate. Prior to the formation of Z/S, Zima was involved with no projects as a fee developer. Zima Dep. 54.

48. As of 2017, Michael Sieman participated in approximately 6-1/2 million square feet of development as part of the financing investment team, arranging for the issuance of debt. Sieman Dep. 28-29. Sieman has consulted on projects, primarily on the ability of the project to succeed based on the financing requirements involved. Sieman Dep. 30.

49. In terms of what might be referred to as "soup-to-nuts" development, it appeared to McNellis that Tucker "understood how to do things and that he was a true developer who had . . . gone from one end of the development scale to the other and understood all facets of it"). McNellis Dep. 46-47. It did not appear to McNellis that Sieman had such experience. McNellis Dep. 52. He has been a part of teams but had never been a developer of record; he had no prior experience as serving as the lead in obtaining entitlements from a municipality. He never

negotiated a development agreement with a municipality. Sieman Dep. 32. Prior to Lincolnwood, Sieman never served as a petitioner on a zoning proposal. Sieman Dep. 36.

50. McNellis recalls that during the course of various meetings with LFRE, the Village President and Village staff had concerns about LFRE's apparent lack of experience and whether that lack of experience would just lead the Village down another rabbit hole which it had just come out of with NCG. McNellis Dep. 28.

51. It appeared to McNellis that Mr. Sieman was very experienced in the area of financing, and Mr. Zima worked with a world-class architectural firm, but their experience seemed to be "siloed" in the areas of financing and architecture and did not have a full range of development experience like Tucker. Sieman never identified any property which he developed. McNellis Dep. 52.

52. In ¶ 77 of its amended complaint, Plaintiff alleges that Plaintiff and Tucker "are similarly situated in that they are both experienced qualified purchasers and developers. They are prima facie identical in all relevant respects." **Def. Ex. 2 at ¶ 77.**

53. Plaintiff's answer to Defense Interrogatory No. 7 asserts that "both LFRE and Tucker are experienced qualified purchasers and developers that sought to purchase the Subject Property, aimed to development, and tried to access the zoning application process to accomplish that goal." **Def. Ex. 20.**

### The Planned Unit Development Procedure

54. Section 8.01 *et seq.* of the Village's Zoning Ordinance, "Planned Unit Developments," is designed "to provide the flexibility needed to allow more creative and imaginative design for land developments than is possible under more conventional zoning regulations." **Def. Ex. 58-59**, Section 8.01(1).

55. A party seeking PUD approval must initially have a "pre-application conference with the Board of Trustees to discuss the proposed development of the subject property, which request shall be accompanied by two paper copies and one electronic copy in a form approved by the zoning officer of each of the materials listed in Section 8.06(1) of this Article." **Def. Ex. 58-59**, Section 806(1).

56. Section 8.06(1) sets forth the required documentation which must be submitted as part of an application for a PUD. Subsection (e) requires a "written description of the proposed planned unit development, describing the purpose of the development and proposed land uses." **Def. Ex. 58-59**; Section 806(1).

57. LFRE never reached the stage where it had the necessary plan prepared in order to submit to the Village Board of Trustees for a pre-application conference. Zima dep. 38-39.

        Respectfully submitted,

        VILLAGE OF LINCOLNWOOD, et al.,

        By:   /s/ John B. Murphey
        John B. Murphey, Its Attorney

John B. Murphey
Odelson, Sterk, Murphey, Frazier & McGrath, Ltd.
3318 West 95th Street
Evergreen Park, Illinois 60805
Tel: 708-424-5678/Fax: 708-741-5053
jmurphey@osmfm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, I electronically filed the foregoing documents with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

Mark Silverman
Melanie J. Chico
Molly E. Thompson
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, Illinois 60606
msilverman@dykema.com
mchico@dykema.com
mthompson@dykema.com


Hart M. Passman
Steven M. Elrod
Elrod Friedman LLP
325 N. LaSalle Street, Suite 450
Chicago, Illinois 60654
hart.passman@elrodfriedman.com
steven.elrod@elrodfriedman.com

By: /s/ John B. Murphey
     John B. Murphey