UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAKE FOREST REAL ESTATE INVESTORS, LLC, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) 19 C 2263 ) |
| VILLAGE OF LINCOLNWOOD, ILLINOIS, and BARRY I. BASS, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Village of Lincolnwood, Illinois ("Village") and Barry I. Bass' (collectively, "Defendants") Motion for Summary Judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the Motion.

**BACKGROUND**

The following facts are from the record and are undisputed unless otherwise noted.

This action arises from Plaintiff Lake Forest Real Estate Investors, LLC's ("LFRE") attempt to redevelop a property located at 4500 West Touhy Avenue in Lincolnwood, Illinois, commonly known as the "Purple Hotel." LFRE claims

Defendants discriminated against it by favoring a different development company, Tucker Development ("Tucker").

The Village is a municipality in the northern suburbs of Chicago and is governed by a Village President and a six-member Board of Trustees. Bass was elected Village President in 2017.

Under the Village's Zoning Ordinance, Planned Unit Developments ("PUD") are designed "to provide the flexibility needed to allow more creative and imaginative design for land developments than is possible under more conventional zoning regulations." Dkt. # 95-36, Section 8.01(1). Parties seeking a PUD approval must have a pre-application conference with the Board of Trustees to discuss the property as well as two paper copies and one electronic copy of their development plan. These documents require a "written description of the proposed planned unit development, describing the purpose or the development and proposed land uses." *Id.* at Section 8.06(1)(e).

LFRE was the contract purchaser of the Purple Hotel property and Z/S Development LLC ("ZS") was the proposed master developer. Michael Sieman was the owner and sole member of LFRE. ZS was formed in 2017, comprised of Sieman and Todd Zima. Sieman has a Master of Science in Real Estate Development from Columbia University, is a licensed real estate broker, and participated in the financing of over 6.5 million feet of development projects valued at over $500,000,000. Prior to Lincolnwood, Siemen never served as the lead in obtaining entitlements from a host

municipality for any development, never appeared before a municipality to obtain zoning relief on behalf of a project he owned, nor ever appeared or served as a petitioner on a zoning proposal. Siemen's role in development has primarily been in the financing of real estate developments.

Zima has a Bachelor of Science degree in Architectural Studies from the University of Illinois, a Master of Architecture degree from the University of California, Berkeley, and was the Design Principal at Studio Gang Architects with over twenty years of experience in real estate development and architecture. ZS had no development contracts with any third party as of fall 2017. The Purple Hotel property was the first land purchase contract that was acquired by ZS and LFRE.

The Village has had a continuing goal to redevelop the Purple Hotel property, creating a Tax Increment Financing District (a "TIF District") for the site. In 2012, the North Capital Group acquired the Purple Hotel property and entered into a development agreement with the Village. However, the property was never developed by North Capital Group and it fell into foreclosure.

On November 16, 2016, LFRE met with the Village's staff to show the first iteration of new design ideas and uses for the Purple Hotel site. LFRE sent revised site and floor plans to the Village on January 11, 2017. On August 15, 2017, the Village adopted "A Resolution Adopting A Conceptual Site Plan For The Former Purple Hotel Site." On the same day, the Village also adopted the Lakota Plan, which would group two northern parcels with the Purple Hotel property, in order to have a clearer plan on

how to develop the property. On October 11, 2017, a sheriff's sale was approved and Romspen Investment Corporation ("Romspen"), North Capital Group's mortgage lender, took title of the Purple Hotel property.

In November 2017, LFRE and Romspen finalized a Purchase and Sale Agreement ("PSA") where LFRE would purchase the Purple Hotel property for $10.7 million with the effective date of November 30, 2017. LFRE posted $300,000 in earnest money and was given until February 14, 2018, to investigate the property, when the earnest money became non-refundable. The PSA called for the closing of the Purple Hotel property to occur on April 2, 2018. LFRE did not cancel the PSA on or before February 14, 2018.

The Village Board met in a closed session on February 6, 2018, to discuss the "potential purchase of the Purple Hotel property through the Village's eminent domain authority." Dkt. # 95-15, p. 2. On February 11, 2018, the Village scheduled a meeting with LFRE for February 20, 2018, to discuss the project and the anticipated approval process. However, the Village later cancelled the meeting and refused to reschedule it, despite LFRE's attempts to do so.

The Village Board met again on February 20, 2018, to introduce two measures. The first was a Resolution authorizing the issuance of a demand to Romspen regarding ordinance enforcement and clean-up of the property and the second was a proposed ordinance to authorize the Village to make a good faith offer to purchase the Purple Hotel property from Romspen. Sieman was present at the meeting and objected to the

4

passage of the acquisition measure. The meeting adjourned, and the Village Board voted to continue the discussion of the acquisition at their next meeting.

The Village Board met again on March 6, 2018, first in an executive session and then in a public meeting. During the executive session, the Village's Finance Director, Tim Wiberg, presented the Village Board with an analysis regarding financing options if the Board would proceed to acquire the Purple Hotel property. Sieman again appeared at the public meeting and argued against the Village's adoption of the acquisition ordinance. Nevertheless, the Board passed the acquisition ordinance.

The next day, the Village attorney sent a letter to Romspen inviting LFRE to make a presentation before a combined meeting of the Village Board and the Village's Economic Development Commissioners on March 20, 2018. Sieman and Zima appeared at the meeting and gave PowerPoint presentations. On March 30, 2018, Sieman sent an email to Richard Tucker, head of Tucker Development, about purchasing the contract for the Purple Hotel Property. Negotiations continued over the next few days.

On April 2, 2018, LFRE and Romspen extended the closing date to April 4, 2018—two days after the initially agreed upon date. LFRE defaulted on the PSA by not closing on April 4, 2018, and Romspen therefore issued a contract termination notice. After LFRE defaulted, Tucker Development continued to negotiate with the Village and Romspen to acquire the Purple Hotel property.

On April 15, 2018, Tucker advised the Village that it obtained a contract to acquire the Purple Hotel property. Tucker is a vertically integrated real estate development firm that was founded in 1996 and has been involved with over 10,000,000 square feet of development. On May 1, 2018, the Village Board repealed the acquisition ordinance. The Village agreed to help Tucker get through the PUD process as it wanted this dormant property to be developed by a "good, responsible developer." Dkt. # 100-2, p. 323.

Based on these events, LFRE alleges the Village discriminated against it in violation of the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983. Defendants now move for summary judgment under Rule 56.

## **LEGAL STANDARD**

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (cleaned up). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant

"must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). And "[c]onclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

## **DISCUSSION**

The Equal Protection Clause of the Fourteenth Amendment states, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. While the typical equal protection claim involves class-based discrimination, such as race, sex, or national origin, "the Clause also prohibits the singling out of a person for different treatment for no rational reason." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). These claims are commonly referred to as "class of one" claims. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 601 (2008). To prevail on a class of one equal protection claim, the plaintiff must prove: (1) it was intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 563, 564 (2000); *Lynch v. City of Chi.*, 75 F. Supp. 3d 828, 830 (N.D. Ill. 2014); *see also Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 480 (7th Cir. 2018). "Class-

7

of-one claimants carry a heavy burden." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021).

Defendants argue LFRE fails to establish either prong of its equal protection claim.[1] The Court addresses each in turn.

### I. Plaintiff and Tucker as Similarly Situated Developers

To satisfy its burden under the similarly situated prong, LFRE must show it and Tucker are "prima facie identical in all relevant respects." *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015). While "[t]here is no precise formula to determine whether an individual is similarly situated to comparators," *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004), if "at least one major difference separates" LFRE and Tucker, then the two entities are not similarly situated, *Paramount Media Grp, Inc. v. Vill. of Bellwood*, 929 F.3d 914, 920 (7th Cir. 2019). The Seventh Circuit requires class of one claimants "to strictly comply with presenting evidence of a similarly situated entity at the summary judgment stage." *Id.* "[A] court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *McDonald*, 371 F.3d at 1002.

We begin by looking at LFRE, Sieman, ZS, and Zima. Sieman holds a master's degree in real estate development, has participated in the financing of over fifty

---

[1] Defendants also re-raise an argument for appeal purposes that a class of one equal protection claim is inapplicable to land use decisions based on case authority from other circuits. This argument was rejected by the Court on Defendants' motion to dismiss. Dkt. # 39. Because there is no apparent change in Seventh Circuit case law, we reject the argument for the same reasons.

development projects totaling 6.5 million square feet, and has a portfolio including mixed use developments similar to the Purple Hotel site. Zima holds a Bachelor of Science degree in Architectural Studies, a master's in architecture and was the Design Principal at Studio Gang Architects with over twenty years of experience in real estate development and architecture. ZS was formed by Sieman and Zima in 2017. Siemen himself admits he is not a master developer but claims the team of himself and Zima make a joint master developer.

The comparator is Tucker. It is a vertically integrated real estate development company with over 20 years of experience in mixed-use development, both in the Chicago area and nationwide. Tucker is a "soup-to-nuts" developer, meaning it controls a project from beginning to end, and has been involved with over 10,000,000 square feet of development.

LFRE argues the two entities are similarly situated, as they both: (1) were entitled under the Village Code to access the pre-application process; (2) had a purchase agreement with Romspen; and (3) sought to access the zoning application process. Those facts are uncontested, but LFRE does not address the differences in experiences between the two developers. While Sieman and Zima may have strong educational backgrounds in real estate development, Tucker has considerably more real-world experience in the real estate development industry. The Purple Hotel property was the first land purchase contract acquired by ZS and LFRE. Prior to the Purple Hotel, Sieman was never the primary developer of a property, had no experience obtaining

9

entitlements from a municipality, and never negotiated a development agreement with a municipality. Meanwhile, Tucker has extensive experience in the field of real estate development, including several projects in the Chicagoland area. Given the stark difference in experience, no reasonable jury could conclude the two entities were similarly situated. *See Paramount*, 929 F.3d at 920 (7th Cir. 2019).

### A. Rational Basis for choosing Tucker over Plaintiffs

Even if Plaintiff and Tucker were similarly situated, the Village had a rational basis for choosing Tucker. When reviewing the rational basis of the defendant's decision to choose another developer over the plaintiffs, a defendant need "not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001) (cleaned up); *FKFJ*, 11 F.4th at 588. Thus, LFRE must show there was no rational basis for choosing Tucker over it for the development of the Purple Hotel site.

In this case, the rational basis given by Defendants is similar to the reasons LFRE and Tucker are not similarly situated. Put simply, the Village chose the far more experienced developer. Plaintiffs argue the choice was arbitrary and capricious. Not so. It is hardly arbitrary, and indeed entirely reasonable, to choose the developer with more experience. This is especially true with a property like the Purple Hotel, which

10

went through years of disrepair. The Village's choice of Tucker over LFRE is therefore based on a rational basis.

At bottom, a reasonable jury could not conclude that Tucker and LFRE are similarly situated, or that the Village's decision was not based on a rational basis. Accordingly, LFRE's class of one equal protection claim fails.[2]

### CONCLUSION

For the reasons mentioned above, the Court grants Defendants' Motion for Summary Judgment (Dkt. 66). Civil case terminated. It is so ordered.

Dated: 05/17/2022

_____
Charles P. Kocoras
United States District Judge

---

[2] Because LFRE's claim fails, we do not address the argument that Bass was not personally involved in the alleged constitutional deprivation.